Bradley J. Luck
Leah T. Handelman
Katelyn J. Hepburn
GARLINGTON, LOHN & ROBINSON, PLLP
350 Ryman Street • P. O. Box 7909
Missoula, MT  59807-7909
Phone (406) 523-2500
Fax (406) 523-2595
bjluck@garlington.com
lthandelman@garlington.com
kjhepburn@garlington.com

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| MOUNTAIN WEST FARM BUREAU MUTUAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>JOSHUA T. PATTERSON, individually and d/b/a PATTERSON ENTERPRISES, INC., JANNA PUMMILL, and ADAM PUMMILL,<br><br>Defendants. | Cause No. _____<br><br><br><br>COMPLAINT FOR DECLARATORY RELIEF |

Plaintiff Mountain West Farm Bureau Mutual Insurance Company

("Mountain West"), by and through its counsel, Garlington, Lohn, & Robinson,

PLLP, for its Complaint for Declaratory Judgment, states and alleges as follows:

1

## I.   PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Mountain West is a corporation organized and existing under the laws of Wyoming and with a principal place of business in Albany County, Wyoming.  Mountain West is an insurance company which is authorized to conduct business in Montana.

2.      Defendant Joshua T. Patterson ("Patterson") is an individual and citizen of Missoula County, Montana.

3.      Patterson operates Patterson Enterprises, Inc. ("PEI").  Upon information and belief PEI maintains its principal place of business in Missoula County, Montana.

4.      Defendant Janna Pummill ("Ms. Pummill") is an individual and citizen of Missoula County, Montana.

5.      Defendant Adam Pummill ("Mr. Pummill") is an individual and citizen of Missoula County, Montana.

6.      Mountain West issued a Country Home Policy to Patterson bearing policy number CQM15960 with a policy period from March 20, 2019 to March 20, 2020 ("Patterson Policy").  A true and correct copy of the Patterson Policy is attached as Exhibit A, with premium information redacted ("Ex. A").

7.      Mountain West issued a Country Home Policy to Mr. and Ms. Pummill bearing policy number CQM15856 with a policy period from December

10, 2017 to December 10, 2018 ("Pummill Policy"). This Policy was in effect from November 2014 until August 2019, at which point it was converted to a City Squire Policy. A true and correct copy of the Pummill Policy is attached as Exhibit B, with premium information redacted ("Ex. B").

8.      Patterson has demanded coverage under the Patterson Policy for claims brought against him in an action styled: *Pummill v. Patterson et al.,* Montana Fourth Judicial District Court, Missoula County as Cause No. DV-32-2020-1210-DQ ("Underlying Action"), which has been consolidated into a separate but related matter styled: *Patterson et al. v. Pummill*, Montana Fourth Judicial District Court, Missoula County, Cause No. DV-32-2020-606-FR.

9.      Ms. Pummill has demanded coverage under the Pummill Policy for counterclaims brought against her by Patterson in the Underlying Action.

10.      Collectively, the plaintiffs and counterclaimants in the Underlying Action seek actual damages, compensatory damages, attorneys' fees, costs, interest, and punitive damages, which exceed $75,000.00.

11.      The liability coverage limits set forth under the Patterson Policy exceeds $75,000.00.

12.      The liability coverage limits set forth under the Pummill Policy exceeds $75,000.00.

13.     Upon information and belief, the actions giving rise to the allegations in the Underlying Action occurred in Missoula County, Montana.

14.     Jurisdiction is proper in the Court under 28 U.S.C. § 1332 because this matter in controversy exceeds $75,000.00 and the Plaintiff and Defendants are citizens of different states.

15.     Venue is proper in the Missoula Division of the District of Montana as Patterson and Ms. Pummill are residents of Missoula County, PEI's principal place of business is in Missoula County, the events giving rise to the Underlying Action occurred in Missoula County, and any judgment against Defendants will be obtained in Missoula County pursuant to the Underlying Action.

16.     There is an actual justiciable controversy between Mountain West and Defendants concerning their rights and obligations under the Policy.

## II.      GENERAL ALLEGATIONS

17.     The parties' rights and obligations under the Policy, specifically whether Mountain West has a duty to defend or indemnify the Defendants on the claims and counterclaims alleged in the Underlying Action, is the subject of this action.

## A.     The Underlying Action

18.     On September 24, 2020, Ms. Pummill filed a Complaint and Request for Jury Trial and for Order in the Montana Fourth Judicial District Court,

Missoula County against Patterson and PEI.  A true and correct copy of the Complaint is attached as Exhibit C ("Underlying Complaint").

19.     The allegations in the Underlying Complaint can be summarized as follows:

On April 12, 2019 Patterson allegedly authored and published a Facebook post about Ms. Pummill in which he allegedly disclosed Ms. Pummill's private healthcare information.  According to the Complaint, the Facebook post remained on the public domain for over six months, including a repeat reference to Ms. Pummill's private healthcare information again on September 19, 2019.

According to the Underlying Complaint, the Facebook post occurred in the midst of ongoing litigation between Patterson and Ms. Pummill's husband, Adam Pummill ("Mr. Pummill"), related to various business issues stemming from the operation and management of several businesses owned by Patterson and in which Mr. Pummill was involved or employed in a supervisory capacity.

The Underlying Complaint alleges that due to the Facebook post, Ms. Pummill suffered severe emotional distress, causing her fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea disrupting a social evening with family and friends at a time of grief.  The Complaint further alleges that Ms. Pummill underwent serious injuries both physical and emotional in the form of physical illness, medication treatment and

counseling to recover from the emotional devastation caused by the disclosure. The Complaint does not specify the alleged physical illnesses Ms. Pummill allegedly experienced as a result of her alleged emotional devastation.

The Underlying Complaint alleges that Patterson committed actual malice in disclosing Ms. Pummill's private information by "knowing or intentionally disregarding the fact" that she would suffer injuries.  The Complaint further alleges that Patterson was "aware disclosure of [Ms. Pummill's] private healthcare information would create a high probability of injury" to her and that "the serious emotional impact" to her "was reasonably foreseeable".  Underlying Complaint, at 3-4.

The Underlying Complaint does not contain any specific counts against Patterson; however, Ms. Pummill seeks general and special damages as well as punitive damages, attorney fees and costs, and an Order permanently enjoining Patterson by whatever name or agent he retains, from publishing private information of whatever kind, about Ms. Pummill or her family members.

20.     Patterson submitted the claims alleged in the Underlying Complaint to Mountain West under the Patterson Policy.

21.     Mountain West issued a reservation of rights letter to Patterson, under which it agreed to provide a defense for the allegations in the Underlying Complaint under a complete reservation of rights.  A true and correct copy of the

reservation of rights letter to Patterson dated April 15, 2021, is attached as Exhibit D.

22.     On October 22, 2020, Patterson filed his Answer and Counterclaim to Plaintiff's Complaint and Jury Demand ("Answer and Counterclaim") in the Underlying Action.  A true and correct copy of the Answer and Counterclaim is attached as Exhibit E ("Underlying Counterclaim").

23.     The Underlying Counterclaim contains two counts against Ms. Pummill, both of which are related to the business litigation lawsuit that Patterson filed against Mr. Pummill.

24.     Count 1 of the Underlying Counterclaim is for Conversion and alleges that Mr. Pummill and Ms. Pummill used a credit card from PEI to pay Northwest Plastic Surgery $5,000 for Ms. Pummill to undergo breast augmentation surgery. This Count further alleges that neither Mr. Pummill nor Ms. Pummill were authorized or had the right to use the credit card to pay for the plastic surgery.  As a result, Ms. Pummill and Mr. Pummill allegedly exerted unauthorized and hostile control over PEI's credit card, which caused harm to the business and Patterson.

25.     Count 2 of the Underlying Counterclaim is for Unjust Enrichment and alleges that Mr. Pummill and Ms. Pummill's unauthorized use of PEI's credit card to pay for Ms. Pummill's cosmetic surgery caused Mr. and Ms. Pummill to be

unjustly enriched.  As a result of this alleged unjust enrichment, Patterson and PEI were allegedly harmed and damaged.

26.     The Underlying Counterclaim seeks actual and compensatory damages as well as attorneys' fees and costs.

27.     Ms. Pummill submitted the claims alleged in the Underlying Counterclaim to Mountain West under the Pummill Policy.

28.     Mountain West issued a reservation of rights letter to Ms. Pummill, under which it agreed to provide a defense for the allegations in the Underlying Counterclaim under a complete reservation of rights.  A true and correct copy of the reservation of rights letter to Ms. Pummill dated April 15, 2021 is attached as Exhibit F.

**B.      Relevant Patterson Policy Provisions**

29.     The Patterson Policy provides the following pertinent liability coverage under Section II – "Farm" Liability Coverage.

## SECTION II – "FARM" LIABILITY COVERAGE

### COVERAGE F – Liability

"We" will pay all sums for which an "insured" is legally liable because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies. If coverage applies, "we" will:

1.     Pay up to "our" limit of liability shown in the "Declarations"; and
2.     Provide a defense at "our" expense with counsel of "our"

choice. "We" may make any investigation and settlement of any claim or suit that "we" decide is appropriate.

"We" will not have any duty to defend any suit, pay any judgment or settle any claim for "bodily injury" or "property damage" to which this insurance does not apply.

Ex. A - 44.

30.     The Patterson Policy includes a number of exclusions applicable to

Coverage F, including the following:

**EXCLUSIONS APPLICABLE TO "BODILY INJURY" OR "PROPERTY DAMAGE"**

"We" do not cover damages for "bodily injury" or "property damage" either actual or alleged arising out of any of the following:

.    .    .

20.     **Intended or Expected Loss.** Any loss that:

    a.     Is intended, expected or directed by any "insured";

    b.     Arises out of intentional or malicious acts of any "insured"; or

    c.     Would reasonably be expected to result from intentional or malicious acts of any "insured."

This exclusion applies whether or not the resulting "bodily injury" or "property damage":

    a.     Is a different sort, quality or extent than might have been initially expected or intended; or

    b.     Is incurred to a different person, entity or property than initially expected or intended.

.    .    .

31.     **Punitive/Exemplary.** Punitive, exemplary or multiples of damages, fines, penalties, assessments or any other such award or finding.

Ex. A – 46:31.

31.     The Patterson Policy also contains an endorsement which amends

Coverage F – Liability and provides certain coverage for "Personal and

Advertising Injury" as follows:

### "PERSONAL AND ADVERTISING INJURY"

For an additional "premium," this endorsement modifies coverage
under Section II – Liability.

"We" agree that Coverage F- Liability is amended to include
"personal and advertising injury."

Coverage applies only to offenses that occur on or after the effective
date of this endorsement during the policy period.

Ex. A - 53.

32.     Coverage under the Personal and Advertising Injury endorsement is

subject to the following exclusions:

**Additional Exclusions:**

The following exclusions are added for the purpose of this
endorsement only:

"We" do not cover damages either actual or alleged arising out of
"personal and advertising injury":

1.     At the direction of or caused directly by an "insured." This
exclusion only applies if an "insured" had knowledge or had
reason to know that the act would cause "personal and
advertising injury."
2.     Arising out of the publication of material, either oral or written,
if an "insured" had knowledge or had reason to know of its
falsity.

3.     Arising out of the publication of material, either oral or written, if the material was first published before the effective date of this endorsement.

4.     Arising out of any criminal act.

5.     Assumed by an "insured" in a contract or agreement, except an implied contract to use another's advertising ideas in an "insured's" advertisement.

6.     Arising out of any breach of contract.

7.     Arising out of the failure of goods, products or services to conform with the quality advertised.

8.     Arising out of the wrong price or description of an "insured's" goods, products or services.

9.     Committed by an "insured" who is in the business of advertising, publishing, telecasting or broadcasting.

10.    Caused by or to an employee of an "insured" at the time of the offense causing injury, whether the "insured" is liable as an employer or in any other capacity. This also applies to consequential injury to a spouse, child, parent, sibling or any other family member of such injured employee.

11.    Resulting in "bodily injury."

12.    Arising out of "impaired property."

13.    Arising out of "your work."

"We" have no obligation under this endorsement to provide a defense against any claim or suit to which this insurance does not apply.

Ex. A - 53.

33.     The Patterson Policy contains the following relevant definitions applicable to liability:

**"Bodily Injury"** means bodily harm, sickness or disease, including required care, loss of services and death to a person caused by an "occurrence."

.  .  .

**"Occurrence"** means:

.  .  .

2.     Under Section II – Liability and Section V – Umbrella; an

11

unexpected and unintended accident, including continuous or repeated exposure to conditions, which results in "bodily injury" or "property damage" during the policy period. All "bodily injury" and "property damage" arising out of a common cause and sequence of events resulting in a loss to a person, persons, entity or entities shall be considered the result of one "occurrence."

.   .   .

**"Personal and advertising injury"** means injury, including consequential injury, arising out of any of the following offenses:
1.  False arrest, detention, imprisonment, or keeping a person against their will.
2.  Malicious prosecution.
3.  Wrongful eviction from, wrongful entry into or invasion of right of occupancy of a dwelling, premises or room that a person occupies, if it is committed by "you" or on "your" behalf.
4.  Oral or written publication, in any manner, of material that:
    a.  Libels or slanders a person or entity.
    b.  Disparages any person or entity's goods, products or services.
    c.  Violates a person's right of privacy.
5.  Use of anyone's advertising idea in "your" advertisement.
6.  Infringement on copyright, trademark, trade dress or slogan of another.

.   .   .

**"Property Damage"** means physical injury to or destruction of tangible property. This includes resulting loss of use caused by an "occurrence."

**Ex. A – 9-11.**

**C.    Relevant Pummill Policy Provisions**

34.    The Pummill Policy provides the following pertinent liability

coverages under Section II – "Farm" Liability Coverage:

## SECTION II – "FARM" LIABILTY COVERAGE

**Coverage F – Liability**

"We" will pay all sums for which an "insured" is legally liable because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies.  If coverage applies, "we" will:

1.    Pay up to "our" limit of liability shown in the "Declarations"; and
2.    Provide a defense at "our" expense with counsel of "our" choice.  "We" may make any investigation and settlement of any claim or suit that "we" decide is appropriate.

"We" will not have any duty to defend any suit, pay any judgment or settle any claim for "bodily injury" or "property damage" to which this insurance does not apply.

Ex. B – 50.

**Coverage M – Damage to Property of Others**

"We" will pay up to the limit shown in the "Declarations" for "property damage" to property of others caused by an "insured."

.    .    .

"We" have no obligation under Coverage M to provide a defense against any claim or suit brought against an "insured."

Ex. B – 51.

35.    The Policy also contains the following Umbrella Coverage under

Section V – Umbrella:

**AGREEMENT**

"We" will pay all sums for which an "insured" is legally liable

because of "bodily injury," "property damage" or "personal and advertising injury" caused by an "occurrence" to which this coverage applies. If coverage applies, "we" will pay up to "our" limit of liability shown in the "Declarations."

This coverage applies only to damages in excess of the minimum required underlying limit or the "retained limit," whichever applies.

## DEFENSE OF SUITS NOT COVERED BY OTHER INSURANCE

1.  "We" will defend any suit seeking damages for "bodily injury," "property damage," or "personal and advertising injury" covered by this policy that are not payable under the terms of the "underlying insurance."

2.  "We" will provide a defense at "our" expense with counsel of "our" choice. "We" may make any investigation and settlement of any claim or suit that "we" decide is appropriate.

3.  "We" will pay expenses incurred by "us" and costs taxed against any "insured" in any suit "we" defend.

4.  "We" will pay the cost of bonds required in a suit defended by "us."  The bond cannot be more than the limit of liability provided by this policy. "We" are not obligated to apply for or furnish any bond.

5.  "We" will pay reasonable expenses incurred by an "insured" at "our"  request, including actual loss of earnings (but not loss of other income), up to $250 per day for assisting "us" in the investigation or defense of any claim or suit.

6.  "We" will pay interest on "our" share of the judgment that accrues after entry of the judgment in any suit "we" defend and before "we" pay, tender or deposit in court that part of the judgment that does not exceed the limit of

liability that applies.

7.       "We" will pay any sums incurred, other than the sums paid to actually settle damages claimed or sued for in addition to "our" liability limit, and "you" do not have to pay any part of them. "You" do have to promptly repay "us" any sums "we" paid to settle damages within "your" "retained limit." If "we" are prevented by law or otherwise from carrying out this provision, "we" will pay the amount incurred.

These coverages are in addition to the Section V limits of liability.

Ex. B – 81.

36.     Coverage F is subject to the following pertinent exclusions.

### EXCLUSIONS APPLICABLE TO "BODILY INJURY" OR "PROPERTY DAMAGE"

"We" do not cover damages for "bodily injury" or "property damage" either actual or alleged arising out of any of the following:

.   .   .

6.     **"Business" Activities.** Any "business" activities of an "insured."

.   .   .

20.    **Intended or Expected Loss.** Any loss that:
     a.     Is intended, expected or directed by any "insured";
     b.     Arises out of intentional or malicious acts of any "insured"; or
     c.     Would reasonably be expected to result from intentional or malicious acts of any "insured."

This exclusion applies whether or not the resulting "bodily injury" or "property damage":

    a.      Is of a different sort, quality or extent than might have been initially expected or intended; or

    b.      Is incurred to a different person, entity or property than initially expected or intended.

.   .   .

30.    **"Professional Liability."**

Ex. B – 52-55.

**ADDITIONAL EXCLUSIONS APPLICABLE TO "PROPERTY DAMAGE"**

"We" do not cover damages for "property damage" either actual or alleged arising out of any of the following:

.   .   .

4.    **Property not Physically Damaged.** Loss of use of property that has not been physically damaged or destroyed that arises out of:

    a.      A delay in or lack of performance by or on an "insured's" behalf of any contract or agreement.

    b.      The failure of an "insured's" products, an "insured's" work or work performed by or an "insured's" behalf to meet the level of:

        (1)    performance;

        (2)    quality;

        (3)    fitness; or

        (4)    durability

      warranted or represented by an "insured."

Ex. B – 57.

The following exclusions apply to Coverage M.

"We" do not pay for damage to property:

1.    If insurance is otherwise provided in this policy;

2.    Caused intentionally by an "insured" who is thirteen (13) years of age or older;

3.    To property, other than a rental golf cart, owned by or rented to an:

    a.    "Insured";

    b.    Tenant of an "insured"; or

    c.    "Resident" of "your" household.

4.    Arising out of:

    a.    "Business" activities or professional services;

    b.    Any act or omission in connection with a premises an "insured" owns, rents or controls other than the "insured location"; or

    c.    The ownership, maintenance or use of an "auto" or "aircraft."

Coverage M is subject only to the above exclusions and not the Section II Exclusions.

Ex. B – 51.

**"Bodily injury"** means bodily harm, sickness, or disease, including required care, loss of services and death to a person caused by an "occurrence."

**"Business"** means a full-time, part-time or occasional trade, profession, or occupation regardless of compensation. "Business" does not mean:

1.    The part-time child care services provided by a:

    a.    Minor who is an "insured."

    b.    Home day care service in which no compensation is received other than the mutual exchange of such services.

2.    The services of a minor who is an "insured" in the delivery of newspapers, mowing of yards off the "insured location" or similar activities.

3.    "Farming."

.   .   .

**"Occurrence"** means:

.   .   .

2.  Under Section II – Liability and Section V – Umbrella; an unexpected and unintended accident, including continuous or repeated exposure to conditions, which results in "bodily injury" or "property damage" during the policy period. All "bodily injury" and "property damage" arising out of a common cause and sequence of events resulting in a loss to a person, persons, entity or entities shall be considered the result of one occurrence."

.   .   .

**"Professional liability"** means damages because of injury arising out of malpractice, error or mistake of "yours," or of a person for whose acts or omissions "you" are legally responsible while rendering or failing to render professional services.

**"Property damage"** means physical injury to or destruction of tangible property.  This includes resulting loss of use caused by an "occurrence."

**Ex. B – 13-16.**

37.   Section V's Umbrella Coverage contains the same pertinent exclusions for Business Activities, Intended or Expected Loss, and Professional Liability that are listed under Section II above, which are applicable to "bodily injury" and "property damage." Section V's Umbrella Policy also contains the same Property Not Physically Damaged exclusion applicable to "property damage."

### COUNT I – DECLARATORY JUDGMENT - PATTERSON

38.   Mountain West repleads and incorporates by reference Paragraphs 1-36 above as though fully set forth herein.

39.     Mountain West has no duty to defend or indemnify Patterson in the Underlying Action, in whole or in part, under Coverage F due to one or all of the following reasons:

a.     The Complaint does not allege "property damage" as defined by the Policy and therefore, "Farm" Liability coverage under Coverage F is not triggered.

b.     The Complaint does not allege "bodily injury" as defined by the Policy and therefore, "Farm" Liability coverage under Coverage F is not triggered.

c.     The Complaint does not alleged an "occurrence" as defined by the Policy and therefore, "Farm" Liability coverage under Coverage F is not triggered.

d.     Exclusion 20 – The Intended or Expected Loss exclusion bars liability coverage under Coverage F for loss that is either intended, expected or directed by any insured.

e.     Exclusion 31 – The Punitive/Exemplary exclusion bars liability coverage under Coverage F for any and all punitive, exemplary, or multiples of damages, fines, penalties, assessments or any other such award or finding.

40.     Additionally, Mountain West has no duty to defend or indemnify Patterson in the Underlying Action, in whole or in part, under the Personal and

Advertising Injury Endorsement of the Policy for one or all of the following reasons:

a.      Exclusion 1 under the Personal and Advertising Injury Endorsement bars coverage if the loss occurs at the direction of or caused directly by an insured.  This exclusion applies if an insured had knowledge or had reason to know that the act would cause personal and advertising injury.

b.       Exclusion 10 under the Personal and Advertising Injury Endorsement bars coverage if the loss is caused by or to an employee of an insured at the time of the offense causing injury, whether the insured is liable as an employer or in any other capacity.  This exclusion also applies to consequential injury to a spouse, child, parent, sibling or any other family member of such injured employee.

c.      Exclusion 11 under the Personal and Advertising Injury Endorsement bars coverage if the damage arising out of the personal and advertising injury result in bodily injury.

41.     Other facts and circumstances documented during this proceeding may further limit Mountain West's duty to defend or indemnify Patterson.

## COUNT II – DECLARATORY JUDGMENT – MS. PUMMILL

42.     Mountain West repleads and incorporates by reference Paragraphs 1-41 above as though fully set forth herein.

43.     Mountain West has no duty to defend or indemnify Ms. Pummill in the Underlying Action, in whole or in part, under Coverage F due to one or all of the following reasons:

a.     The Complaint does not allege "property damage" as defined by the Policy and therefore, "Farm" Liability coverage under Coverage F is not triggered.

b.     The Complaint does not allege "bodily injury" as defined by the Policy and therefore, "Farm" Liability coverage under Coverage F is not triggered.

c.     The Complaint does not allege an "occurrence" as defined by the Policy and therefore, "Farm" Liability coverage under Coverage F is not triggered.

d.     Exclusion 6 – The Business Activities exclusion bars liability coverage under Coverage F for any business activities of an insured.

e.     Exclusion 20 - The Intended or Expected Loss exclusion bars liability coverage under Coverage F for loss that is either intended, expected or directed by any insured.

f.     Exclusion 30 – The Professional Liability exclusion bars liability coverage under Coverage F for damage caused by injury arising out of any malpractice, error or mistake of the insured while rendering or failing to render professional services.

44.     Additionally, Mountain West has no duty to defend or indemnify Ms. Pummill in the Underlying Action, in whole or in part, under Coverage M of the Policy for one or all of the following reasons:

a.     The Complaint does not allege "property damage" as defined by the Policy and therefore, Farm Liability coverage under Coverage M is not triggered.

b.     Exclusion 1 under Coverage M excludes coverage for property damage to the extent it is covered elsewhere in the Policy.

c.     Exclusion 2 under Coverage M excludes coverage for damage to property which is caused intentionally by an insured who is thirteen (13) years of age or older.

d.     Exclusion 4 under Coverage M excludes coverage for damage to property arising out of business activities of professional services.

45.     Additionally, Mountain West has no duty to defend or indemnify Ms. Pummill in the Underlying Action, in whole or in part, under the City Squire Umbrella Coverage section of the Policy for one or all of the following reasons:

a.     The Umbrella Coverage section of the Policy has not been triggered because damages are not in excess of the minimum required underlying limit or the retained limit.

b.     The Complaint does not allege "property damage" as defined

by the Policy and therefore, liability coverage under the Umbrella Coverage

section of the Policy is not triggered.

       c.    The Complaint does not allege "bodily injury" as defined by the

Policy and therefore, liability coverage under the Umbrella Coverage section of the

Policy is not triggered.

       d.    The Complaint does not allege an "occurrence" as defined by

the Policy and therefore, liability coverage under the Umbrella Coverage section of

the Policy is not triggered.

       e.    Exclusion 8 – The Business Activities exclusion bars liability

coverage under the Umbrella Coverage section of the Policy for any business

activities of an insured, except to the extent that coverage is provided by the

underlying insurance for business activities coverage.

       f.    Exclusion 25 – The Intended or Expected exclusion bars

liability coverage under the Umbrella Coverage section of the Policy for any loss

that is intended, expected or directed by any insured, arises out of intentional or

malicious acts of any insured or would reasonably be expected to result from

intentional or malicious acts of any insured.

       g.    Exclusion 39 – The Professional Liability exclusion bars

liability coverage under Umbrella Coverage section of the Policy for damage

arising out of any professional liability of an insured except to the extent that coverage is provided by the underlying insurance for professional liability.

46.    Other facts and circumstances documented during this proceeding may further limit Mountain West's duty to defend or indemnify Ms. Pummill.

## PRAYER FOR RELIEF

WHEREFORE, Mountain West requests the following relief:

1.    For Count I for Declaratory Judgment, for a judicial declaration that Mountain West has no duty to defend or indemnify Patterson, in whole or in part, in connection with the Underlying Action;

2.    For Count II for Declaratory Judgment, for a judicial declaration that Mountain West has no duty to defend or indemnify Ms. Pummill, in whole or in part, in connection with the Underlying Action;

3.    For recoupment of its defense costs including attorneys' fees paid to defend the Underlying Action;

4.    For pre-judgment and post-judgment interest; and

5.    For such other relief as the Court deems just.

DATED this 10th day of May, 2021.

/s/  Katelyn J. Hepburn
Attorneys for Plaintiff